**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hanna Furst, et al., | No. CV-20-01651-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Linda Mayne, et al., | |
| Defendants. | |

At issue is a motion for partial summary judgment filed on behalf of Defendants Linda Mayne ("Linda"), individually and as Co-Trustee of the DHF Corporation Profit Sharing Plan (the "Plan"), and Stephen S. Mayne (Doc. 108), which is fully briefed (Docs. 113, 114, 119). For reasons explained below, Defendants' motion for partial summary judgment is granted in part and denied in part.[1]

**I.    Background**

As relevant, the complaint alleges the following.

Hanna Furst ("Hanna") and her spouse, David Furst ("David"), formed DHF Corporation in the 1980s and were the company's sole shareholders. (Doc. 1 ¶ 15.) DHF Corporation formed the Plan, which is a defined contribution, individual account, employee pension benefit plan covered by the Employment Retirement Income Security

---

[1] Oral argument is denied because the issues are adequately briefed, and oral argument will not help the Court resolve the motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

Act ("ERISA"). (¶¶ 10, 16.) The Plan sponsor is DHF Corporation; the sole employee-participant of the Plan was David; prior to February 2018, the Plan trustees and administrators were David and Hanna; and the Plan's assets consisted of three stock, bond, and cash portfolios maintained at TD Ameritrade, Charles Schwab, and E-Trade. (¶¶ 17-20.) In February 2018, Linda and her brother, Plaintiff Robert Furst ("Robert"), were appointed as the Plan's new co-trustees. (¶ 21.) David passed away in 2019, leaving Hanna as the sole Plan beneficiary. (¶¶ 44-45.)

After David's death, Linda instructed TD Ameritrade not to permit any further investments or disbursements, resulting in those funds being invested unproductively in cash. (¶ 50.) Linda also obstructed efforts by Robert to obtain access to the Plan's various accounts. (¶¶ 52-54.) The Plan's Charles Schwab and E-Trade accounts have not been productively invested since February 2019. (¶ 58.)

The complaint accuses Linda of breaching her fiduciary duties of prudence and loyalty under 29 U.S.C. § 1104. (¶¶ 96-107.) The complaint also seeks equitable relief under 29 U.S.C. § 1132(a) in the form of an order declaring that Hanna is entitled to full distribution of Plan assets and prohibiting Linda from interfering with the Plan distribution, identifying the Plan trustee(s) and administrator(s), removing Linda from any fiduciary or other role in relation to the Plan, and appointing a qualified replacement. (¶¶ 108-111.)

Defendants previously moved to partially dismiss the complaint. (Doc. 40.) The Court granted that motion in part. (Doc. 74.) The Court dismissed the claims that Robert (who is an attorney) had attempted to bring on behalf of Hanna because Hanna subsequently was placed under conservatorship, the conservator retained new counsel for Hanna, and new counsel did not wish to pursue the claims.[2] (*Id.* at 4.) The Court also dismissed the claims that Robert purported to bring on behalf of the Plan because the prerequisites to filing such a suit had not been satisfied. (*Id.* at 4-5.) The Court allowed Robert to pursue claims in his capacity as co-trustee of the Plan against Linda for allegedly breaching her fiduciary duties. (*Id.* at 5-6.)

---

[2] Hanna has since passed away. (Doc. 114-1 at 6.)

Defendants now move for partial summary judgment. (Doc. 108.) They argue that summary judgment should be granted in their favor on the breach of fiduciary duty claim (count one of the complaint) because, assuming the alleged breaches occurred,[3] Robert will be unable to prove at trial that the Plan suffered losses as a result. (*Id.* at 2-5.) As for the claim for equitable relief (count two on the complaint), Defendants seek summary judgment in their favor only on the allegations in paragraph 109 of the complaint, which they contend is, at bottom, a benefits claim under 29 U.S.C. § 1132(a)(1)(B), which Robert lacks standing to bring. (*Id.* at 5-6.)

In response to Defendants' partial summary judgment motion, Robert failed to produce any evidence relating to the Plan's Charles Schwab account. His evidence and arguments pertain solely to the TD Ameritrade and E-Trade accounts. (Docs. 113-114.) What's more, Robert now argues that only those accounts were invested unproductively in cash only. (Doc. 114-1 at 5.) It is not uncommon, however, for claims to be narrowed or refined over the course of litigation. Based on Robert's response brief, the Court understands him to no longer be pursuing a claim that Linda acted imprudently with respect to the Plan's Charles Schwab account or contending that the Charles Schwab account experienced losses. Rather, the Court understands Robert to be contending that Linda acted imprudently with respect to the TD Ameritrade and E-Trade portfolios by refusing to reinvest the liquidated proceeds of those accounts into other investment vehicles, and that *those* Plan assets lost value as a result.

**II.    Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable factfinder could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air,*

---

[3] Defendants do not concede that any breaches of fiduciary duty occurred.

*Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id.* at 324. Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

**III.   Analysis**

**A. Loss**

Count one of the complaint alleges that Linda breached her fiduciary duties of prudence and loyalty to the Plan. To succeed at trial, Robert will need to prove that Linda acted as a fiduciary, breached her duties, and caused a loss to the Plan. *See Dormani v. Target Corp.*, 970 F.3d 910, 914 (8th Cir. 2020). Defendants contend that summary judgment should be entered in their favor because Robert will be unable at trial to prove that the Plan suffered a loss. *See Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 920 (8th Cir. 1994); *Bd. of Trustees of Aftra Retirement Fund v. JPMorgan Chase Bank, N.A.*, 806 F.Supp.2d 662, 681-82 (S.D.N.Y. 2011); *see also Celotex*, 477 U.S. at 322. In analyzing this issue, the Court differentiates between the *fact* of a loss (the binary question of whether the Plan did or did not suffer a loss) and the *amount* of the loss (the variable question of how much).

Robert has shown the existence of a genuine factual dispute as to the fact of a loss to the Plan. Robert submitted an affidavit with his response brief in which he explains that, shortly after their father's death, he and Linda "agreed to liquidate [the Plan's] existing

stock portfolio and retain an investment specialist to create a new stock portfolio for the Plan."[4] (Doc. 114-1 at 5.) During the first week in February 2019, they sold all investments in the Plan's brokerage accounts at TD Ameritrade and E-Trade. (*Id.*) But, despite Robert's demands, Linda refused to cooperate in the reinvestment of these funds, resulting in the proceeds being "invested unproductively in cash only" and "never reinvested . . . during Hanna's entire remaining lifetime." (*Id.* at 5-6.) Robert also submits an email Linda sent him on January 23, 2020, in which Linda laments that the Plan lost money because its brokerage accounts were liquidated. (*Id.* at 21.) In the email, Linda blames the loss on Robert's "demands to sell all the stocks just days after Dad passed." (*Id.*) Robert blames the loss on Linda's refusal to cooperate in the reinvestment of the proceeds. Viewing the facts in the light most favorable to Robert, as the Court must at this stage, the Court finds the existence of a genuine and material fact dispute over where the Plan did or did not suffer a loss because of the failure to reinvest the liquidated proceeds of the TD Ameritrade and E-Trade accounts.

As for the amount of the loss, an accepted measure is one that "seeks to put the Plan[] in the position [it] would have been in had there been no breach." *Schoenholtz v. Doniger*, 657 F. Supp. 899, 903 (S.D.N.Y. 1987). Here, Robert claims that the breach was Linda's refusal to cooperate in the reinvestment of the TD Ameritrade and E-Trade proceeds. Thus, the Plan's loss could acceptably be measured by the difference between the value of those proceeds and what they would have earned had they been productively invested.

> In determining what the Plan would have earned had the funds been available for other Plan purposes, the district court should presume that the funds would have been treated like other funds being invested during the same period in proper transactions. Where several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these. The

---

[4] The Court therefore does not understand Robert to be claiming that the liquidation of these accounts alone constituted a breach of fiduciary duty. Robert seems to concede that he also wanted to liquidate the accounts. Instead, the dispute is over what happened with the liquidated proceeds. Robert claims that he wanted the proceeds to be reinvested in other investment vehicles, but Linda refused to cooperate, resulting in the proceeds being unproductively invested in cash only for the duration of Hanna's lifetime.

- 5 -

> burden of proving that the funds would have earned less than that amount is on the fiduciaries found to be in breach of their duty.

*Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985).

Importantly, "the measure of . . . damages need not be exact—'it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.'" *Martin v. Feilen*, 965 F.2d 660, 672 (8th Cir. 1992) (*quoting Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931)). The Court therefore tolerates some uncertainty about the measure of damages because, once a plaintiff establishes a breach of fiduciary duty (which is not contested for purposes of this motion) and the *fact* of a loss, doubts over the *amount* of the loss should be resolved against the fiduciary. *See Kim v. Fujikawa*, 871 F.2d 1427, 1430-31 (9th Cir. 1989); *Donovan*, 754 F.2d at 1056.

As part of his discovery disclosures, Robert identified for Defendants three alternative methods of measuring the loss to the Plan:

> Damages caused by Linda . . . are measured by Hanna['s] . . . account balance in the . . . Plan, determined on February 8, 2019, multiplied by a fraction, the numerator of which is the S&P 500 index on February 8, 2019, and the denominator of which is the S&P 500 index on the first date of trial.
>
> Alternatively, damages caused by Linda . . . are measured by Hanna['s] . . . account balance in the . . . Plan, determined on February 8, 2019, multiplied by a fraction, the numerator of which is the Vanguard Total World Stock ETF on February 8, 2019, and the denominator of which is the Vanguard Total World Stock ETF on the first date of trial. . . .
>
> At a minimum, the . . . [P]lan was damaged by the failure to reinvest the cash at the prevailing money market interest rate of 2.4% per annum, as adjusted from time to time.

(Doc. 108-1 at 17.) Defendants do not contend that these are unacceptable methods of calculating damages, but they argue that Robert has not provided sufficient evidence of (1) the Plan's value at the relevant time, (2) the relevant stock indices, and (3) how he calculated the prevailing money market interest rate or how it would be adjusted from time to time. The Court mostly disagrees.

Starting with the value of the Plan, the Court understands Robert's claim to be that two specific Plan assets—the TD Ameritrade and E-Trade accounts—lost value because their liquidated proceeds were not productively reinvested. Robert has proffered sufficient evidence to approximate through reasonable inference the value of these accounts as of the relevant date. *See Martin*, 965 F.2d at 672. First, Robert contends in his affidavit that he and Linda liquidated these accounts in early February 2019. (Doc. 114-1 at 5.) Next, he supplies a TD Ameritrade account statement for the month of February 2019 showing a current account value of $399,131.52 and reflecting the sale of various securities during the first part of the month. (*Id.* at 9-11.) He also supplies a 2019 Form 1099-B reflecting proceeds from broker and barter exchange transactions for the Plan's E-Trade account, which indicates that various stocks were sold in the early part of February 2019 and valuing the proceeds of those transactions at $140,177.43. (*Id.* at 14-15.) Because Robert contends in his affidavit that these accounts were liquidated, it stands to reason that these values reflect the entire stock and bond portfolios. Drawing all reasonable inferences in Robert's favor, Robert has proffered sufficient evidence to reasonably approximate the value of the TD Ameritrade and E-Trade liquidated proceeds.

Next, the relevant stock indices. Robert correctly argues that the Court may take judicial notice of stock prices. *See, e.g., Grimes v. Navigant Consulting, Inc.*, 185 F.Supp.2d 906, 913 (N.D. Ill. 2002); *FMC Corp. v. Boesky*, 727 F. Supp. 1182, 1196 n.17 (N.D. Ill. 1989). And he notes that it is not currently possible to provide those stock prices as of "the first date of trial" because the first day of trial has not occurred. Because the Court may take judicial notice of current and historical stock prices, the Court is satisfied that at trial Robert will be able to proffer evidence of these values.[5]

---

[5] In a footnote to their reply brief, Defendants state that, "if the Court is inclined to take judicial notice," they request "to be heard pursuant to Fed. R. Evid. 401(e)." (Doc. 119 at 6 n.4.) This request is no impediment to the Court denying summary judgment for two reasons. First, Defendants' reply brief afforded them an opportunity to be heard on this issue for purposes of the summary judgment motion, *see No Casino In Plymouth v. National Indian Gaming Commission*, No. 2:18-cv-01398-TLN-CKD, 2022 WL 1489498, at *7 (E.D. Cal. May 11, 2022), and instead of using that opportunity to articulate a specific reason why the relevant stock prices are not judicially noticeable, Defendants merely requested another opportunity to be heard. Second, Robert has not moved for summary judgment. The Court is not being asked to calculate damages now. This calculation will

Lastly, the money market interest rate. According to Robert, Linda had initially agreed to invest the TD Ameritrade and E-Trade liquidated proceeds into a Charles Schwab money market investment account with the code of SWVXX yielding 2.4%, but then reneged. (Doc. 113 at 5.) For support, Robert cites to his own affidavit and to two emails in which he told an investment advisor that he wanted to invest the proceeds in the Charles Schwab money market investment account with a 2.4% return, and in which he claims that Linda refused. (Doc. 114-1 at 6, 17, 19, 21.) Defendants correctly note that Robert has not proffered evidence that the relevant Charles Schwab account had a 2.4% rate of return, nor has he explained how that rate would be adjusted from time to time. And while "the interest-bearing nature of money market accounts is a proper subject of judicial notice," *Goldblatt v. F.D.I.C.*, 105 F.3d 1325, 1329 (9th Cir. 1997), Robert has not argued that the Court can or should take judicial notice of the prevailing money market interest rates during the relevant time. The Court, however, does not need to definitely address this alternative measure of damages at this stage because, as explained in the previous paragraphs, Robert has shown that triable issues exist as to at least two of his three proposed methods of calculating damages. Defendants therefore have not shown an entitlement to summary judgment on the breach of fiduciary duty claim.

### B. Paragraph 109

Count two of the complaint is a claim for equitable relief under 29 U.S.C. § 1132(a). The complaint sets forth three separate paragraphs (paragraphs 109-111) identifying the relief sought. Only paragraph 109 is at issue in Defendants' partial summary judgment motion. Paragraph 109 reads:

> In order to obtain appropriate equitable relief to redress Linda['s] . . . violations of ERISA and to enforce ERISA's provisions, Plaintiffs seek a Court order that (a) Hanna . . . is entitled to full distribution of her plan benefits, and (b) Linda . . . is prohibited from interfering with the plan distribution.

(Doc. 1 ¶ 109.)

---

occur at trial, and only if Robert proves that Linda breached her fiduciary duties. Defendants therefore will have an opportunity at trial to be heard on the propriety of judicially noticing these stock prices.

At bottom, this paragraph seeks distribution of Plan benefits, and Defendants correctly argue that pursuant to 29 U.S.C. 1132(a)(1)(B), Robert lacks standing to bring a benefits claim because only an ERISA plan participant or beneficiary may bring such a claim and Robert is neither. See *Neuma, Inc. v. Wells Fargo & Co.*, 515 F.Supp.2d 825, 846 (N.D. Ill. 2006) ("Only a 'participant' in an ERISA plan or a 'beneficiary' has standing to bring a claim under § 1132(a)(1)(B).").

To avoid summary judgment, Robert attempts to recast paragraph 109 as a claim for other "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3), but this argument is inconsistent with the language of paragraph 109. What's more, "[s]ection 1132(a)(3) is a 'catchall' or 'safety net' designed to 'offer[] appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy.'" *Wise v. Verizon Commc'ns Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)). Thus, a claimant cannot pursue a § 1132(a)(3) claim based on denial of benefits where remedies under § 1132(a)(1)(B) are adequate to make the claimant whole. *See Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 371 (6th Cir. 2015). Here, Hanna could have pursued a benefits claim but chose not to. Robert therefore cannot seek equitable relief under § 1132's catchall provision based on the alleged denial of benefits to Hanna. Defendants are entitled to summary judgment on paragraph 109 of the complaint.

**IT IS ORDERED** that Defendants' motion for partial summary judgment (Doc. 108) is **GRANTED IN PART** and **DENIED IN PART** as explained herein.

**IT IS FURTHER ORDERED** that the parties shall appear for a telephonic trial scheduling conference on October 15, 2024, at 9:45 a.m. Call-in instructions will be sent to the parties via separate email.

Dated this 17th day of September, 2024.

Douglas L. Rayes
Senior United States District Judge