**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hanna Furst, et al., | No. CV-20-01651-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Linda Mayne, et al., | |
| Defendants. | |

At issue is a motion (Doc. 152) filed by Defendants Linda Mayne ("Linda"), individually and as Co-Trustee of the DHF Corporation Profit Sharing Plan (the "Plan"), and Stephen S. Mayne seeking reconsideration of the Court's order granting in part and denying in part Defendants' motion for partial summary judgment (Doc. 129). The motion for reconsideration is fully briefed (Doc. 155) and for reasons below is denied.

**I.   Background**

  **A. Allegations in the Complaint**

Hanna Furst ("Hanna") and her spouse, David Furst ("David"), formed DHF Corporation in the 1980s and were the company's sole shareholders. (Doc. 1 ¶ 15.) DHF Corporation formed the Plan, which is a defined contribution, individual account, employee pension benefit plan covered by the Employment Retirement Income Security Act ("ERISA"). (¶¶ 10, 16.) The Plan sponsor is DHF Corporation; the sole employee-participant of the Plan was David; prior to February 2018, the Plan trustees and

administrators were David and Hanna; and the Plan's assets consisted of three stock, bond, and cash portfolios maintained at TD Ameritrade, Charles Schwab, and E-Trade. (¶¶ 17-20.) In February 2018, Linda and her brother, Plaintiff Robert Furst ("Robert"), were appointed as the Plan's new co-trustees. (¶ 21.) David passed away in 2019, leaving Hanna as the sole Plan beneficiary. (¶¶ 44-45.)

After David's death, Linda instructed TD Ameritrade not to permit any further investments or disbursements, resulting in those funds being invested unproductively in cash. (¶ 50.) Linda also obstructed efforts by Robert to obtain access to the Plan's various accounts. (¶¶ 52-54.) The Plan's Charles Schwab and E-Trade accounts have not been productively invested since February 2019. (¶ 58.)

The complaint accuses Linda of breaching her fiduciary duties of prudence and loyalty under 29 U.S.C. § 1104. (¶¶ 96-107.) The complaint also seeks equitable relief under 29 U.S.C. § 1132(a) in the form of an order declaring that Hanna is entitled to full distribution of Plan assets and prohibiting Linda from interfering with the Plan distribution, identifying the Plan trustee(s) and administrator(s), removing Linda from any fiduciary or other role in relation to the Plan, and appointing a qualified replacement. (¶¶ 108-111.)

### B. Procedural History

Defendants previously moved to partially dismiss the complaint. (Doc. 40.) The Court granted that motion in part. (Doc. 74.) The Court dismissed the claims that Robert (who is an attorney) had attempted to bring on behalf of Hanna because Hanna subsequently was placed under conservatorship, the conservator retained new counsel for Hanna, and new counsel did not wish to pursue the claims.[1] (*Id.* at 4.) The Court also dismissed the claims that Robert purported to bring on behalf of the Plan because the prerequisites to filing such a suit had not been satisfied. (*Id.* at 4-5.) The Court allowed Robert to pursue claims in his capacity as co-trustee of the Plan against Linda for allegedly breaching her fiduciary duties. (*Id.* at 5-6.)

---

[1] Hanna has since passed away. (Doc. 114-1 at 6.)

Following the close of discovery, Defendants moved for partial summary judgment. (Doc. 108.) They argued that summary judgment should be granted in their favor on the breach of fiduciary duty claim (count one of the complaint) because, assuming the alleged breaches occurred,[2] Robert will be unable to prove at trial that the Plan suffered losses as a result. (*Id.* at 2-5.) As for the claim for equitable relief (count two on the complaint), Defendants sought summary judgment in their favor only on the allegations in paragraph 109 of the complaint, which they argued reflected, at bottom, a benefits claim under 29 U.S.C. § 1132(a)(1)(B), one Robert lacks standing to bring. (*Id.* at 5-6.)

The Court granted summary judgment for Defendants on the allegations in paragraph 109 of the complaint but denied summary judgment on the breach of fiduciary duty claim. (Doc. 129.) To succeed at trial, Robert will need to prove that Linda acted as a fiduciary, breached her duties, and caused a loss to the Plan. *See Dormani v. Target Corp.*, 970 F.3d 910, 914 (8th Cir. 2020). The Court observed that the sole basis for Defendants' summary judgment motion was their argument that "Robert will be unable at trial to prove that the Plan suffered a loss." (*Id.* at 4.) And the Court denied summary judgment because it found that Robert had supplied sufficient evidence to create genuine issue of material fact about Plan losses. (*Id.* at 4-8.)

After the Court entered its summary judgment order, new counsel noticed an appearance on behalf of Defendants. (Doc. 130.) Prior to the trial scheduling conference, Defendants filed a "Statement Regarding Clarification in the Court's September 17 Order." (Doc. 138.) On review, the Court determined that, rather than clarification, Defendants were seeking reconsideration of the Court's summary judgment order by raising additional arguments, most (if not all) of which did not appear to have been made in the original summary judgment briefing. The Court advised the parties that it would take no action on Defendants' "Statement Regarding Clarification" because it was, in essence, an untimely motion for reconsideration. But the Court allowed Defendants to move for leave to file a tardy motion for reconsideration if they believed good cause existed for extending the

---

[2] Defendants do not concede that any breaches of fiduciary duty occurred.

- 3 -

presumptive 14-day deadline in which to file such motions. (Doc. 139.) Defendants thereafter moved for leave to file a motion for reconsideration (Doc. 142), which the Court granted (Doc. 145) over Robert's objection (Doc. 143).

Defendants filed their motion for reconsideration on December 17, 2024 (Doc. 152), and Robert responded on January 9, 2025 (Doc. 155).

## II.     Legal Standard

Motions for reconsideration should be granted only in rare circumstances. *Defenders of Wildlife v. Browner,* 909 F. Supp. 1342, 1351 (D. Ariz. 1995). Mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.,* 689 F. Supp. 1572, 1573 (D. Haw. 1988). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also* LRCiv 7.2(g). Such motions should not be used for the purpose of asking a court "'to rethink what the court had already thought through—rightly or wrongly.'" *Defenders of Wildlife*, 909 F. Supp. at 1351 (quoting *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).

## III.    Analysis

Defendants do not identify any intervening changes in controlling law, nor do they cite the Court to newly discovered evidence that could not have been brought to its attention earlier with reasonable diligence. Instead, Defendants contend that the Court's order denying summary judgment on Robert's breach of fiduciary duty claim was manifestly erroneous for three reasons. First, they contend that the Court misconstrued evidence of losses suffered by the Furst Family Trust ("Trust") as losses suffered by the Plan. (Doc. 152 at 3-8.) Next, they argue that when the misconstrued evidence is stripped away, all that remains to support Robert's claim that the Plan suffered losses is Robert's own uncorroborated, self-serving affidavit, which is insufficient to create a genuine issue of material fact. (*Id.* at 8-11.) Finally, Defendants contend that summary judgment should

have been entered on the breach of fiduciary duty claim because there is no evidence in the record that Robert required Linda's cooperation to reinvest the Plan's funds. (*Id.* at 12-13.)

The Court begins with Defendants' third argument. In moving for summary judgment on Robert's breach of fiduciary duty claim, Defendants argued *only* that Robert "has not offered evidence on the amount of alleged losses suffered by the Plan or an estimate of the amount of alleged losses suffered by the Plan." (Doc. 108 at 3.) Nowhere in the motion did Defendants raise as an issue whether Linda's cooperation was needed to reinvest the Plan funds. The Court did not manifestly err by limiting its analysis to the only issues raised by Defendants in their summary judgment motion. Defendants do not explain why this issue was not or could not have been raised during the initial summary judgment briefing. The Court's scheduling order limits the parties to one summary judgment motion each (Doc. 88 at 4); Defendants may not evade this limitation by using their motion for reconsideration functionally as second summary judgment motion raising new issues not previously before the Court.

Next, Defendants correctly observe that the Court's summary judgment order misconstrued certain evidence as evidence of losses suffered by the Plan when that evidence pertained to the Trust. In particular, the Court's order stated:

> Robert . . . submits an email Linda sent him on January 23, 2020, in which Linda laments that the Plan lost money because its brokerage accounts were liquidated. (*Id.* at 21.) In the email, Linda blames the loss on Robert's "demands to sell all the stocks just days after Dad passed." (*Id.*) Robert blames the loss on Linda's refusal to cooperate in the reinvestment of the proceeds. Viewing the facts in the light most favorable to Robert, as the Court must at this stage, the Court finds the existence of a genuine and material fact dispute over where the Plan did or did not suffer a loss because of the failure to reinvest the liquidated proceeds of the TD Ameritrade and E-Trade accounts.

(Doc. 129 at 5.) The January 23 email, however, refers to the Trust, not to the Plan. (Doc. 114-1 at 21.) Likewise, when discussing one of the three ways in which Robert anticipates proving the amount of the Plan's loss, the Court referenced "two emails in which [Robert] told an investment advisor that he wanted to invest the proceeds in the Charles Schwab

- 5 -

money market investment account with a 2.4% return, and in which he claims that Linda refused." (Doc. 129 at 8.) Defendants note that no record evidence indicates that this investment advisor was related to the Plan. Further, one of the emails, dated March 27, 2019, does not reference the Plan, and its subject line instead states "Furst Trust funds." (Doc. 114-1 at 19.) But the other email, dated March 17, 2019, discusses both the Trust and the Plan (Doc. 114-1 at 17), so it is not clear to the Court that the investment advisor was not also advising in some capacity on how best to manage the Plan's assets.

These minor mistakes do not amount to manifest error, however, because the Court disagrees with Defendants on their final argument—that Robert's affidavit is insufficient to create a genuine issue of material fact. As explained in the Court's summary judgment order:

> Robert has shown the existence of a genuine factual dispute as to the fact of a loss to the Plan. Robert submitted an affidavit with his response brief in which he explains that, shortly after their father's death, he and Linda "agreed to liquidate [the Plan's] existing stock portfolio and retain an investment specialist to create a new stock portfolio for the Plan."[3] (Doc. 114-1 at 5.) During the first week in February 2019, they sold all investments in the Plan's brokerage accounts at TD Ameritrade and E-Trade. (*Id.*) But, despite Robert's demands, Linda refused to cooperate in the reinvestment of these funds, resulting in the proceeds being "invested unproductively in cash only" and "never reinvested . . . during Hanna's entire remaining lifetime." (*Id.* at 5-6.)

(Doc. 129 at 4-5.) Defendants contend that Robert's affidavit cannot defeat summary judgment because it is self-serving and uncorroborated. But an affidavit often will be self-serving, "otherwise there would be no point in his submitting it. That an affidavit is self-serving bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact." *U.S. v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999). Robert's affidavit stated more than mere conclusions; it asserted facts that appear to be within Robert's personal knowledge and about which he is competent to testify. Under

---

[3] The Court therefore does not understand Robert to be claiming that the liquidation of these accounts alone constituted a breach of fiduciary duty. Robert seems to concede that he also wanted to liquidate the accounts. Instead, the dispute is over what happened with the liquidated proceeds. Robert claims that he wanted the proceeds to be reinvested in other investment vehicles, but Linda refused to cooperate, resulting in the proceeds being unproductively invested in cash only for the duration of Hanna's lifetime.

- 6 -

such circumstances, it is inappropriate to disregard his affidavit for purposes of summary judgment. *See S.E.C. v. Phan*, 500 F.3d 895, 909-910 (9th Cir. 2007); *see also Gage v. Midwestern Univ.*, No. 23-16078, 2024 WL 5205743 (9th Cir. Dec. 24, 2024).

For these reasons, Defendants have not shown that the Court manifestly erred in finding that Robert had produced sufficient evidence to create a triable issue of fact regarding Plan losses.

**IT IS ORDERED** that Defendants' motion for reconsideration (Doc. 152) is **DENIED**.

Dated this 19th day of February, 2025.

Douglas L. Rayes
Senior United States District Judge